UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                        2:05-cr-83-FtM-29SPC

JOSEPH MADDOX
_____

### OPINION AND ORDER

_____This matter comes before the Court on defendant's Motion to Suppress (Doc. #27), filed on November 17, 2005.  The government filed its Response (Doc. #28) on November 21, 2005, and the Court conducted an evidentiary hearing on December 5, 2005.

### I.

On April 26, 2005, Officer Emily Everson, a police officer with the Fort Myers Police Department, was on routine patrol in her assigned area with a "ride-along" high school student.  Officer Everson was in uniform and driving a marked patrol vehicle.  A few minutes prior to 8:30 a.m. Officer Everson observed a vehicle, ultimately determined to be driven by defendant Joseph Maddox (defendant or Maddox), fail to make a complete stop at a stop sign at the intersection of Marion and Veronica Shoemaker streets.  Officer Everson was westbound on Marion when she made her observations, and defendant was northbound on Veronica Shoemaker.  Officer Everson testified that she observed the vehicle "roll through" a stop sign at about 5-8 miles per hour, although that portion of the intersection had some visual obstructions due to

trees, scrubs, and grass.  Officer Everson testified that defendant looked at her as he went through the intersection, then accelerated.  Officer Everson immediately activated her lights and siren, notified the police department's Central Communications, and followed the vehicle.  Defendant did not slow his vehicle, but made two turns onto local streets and ultimately turned onto Pearl Street and pulled his vehicle into the front yard at 3620 Pearl Street.  Officer Everson estimated that defendant traveled as fast as 40 miles per hour.

Officer Everson testified that defendant got out of the vehicle and started walking towards the front door of the house.  More than once Officer Everson told defendant to stop, but he ignored her, stating that he lived in the house.  Officer Everson told defendant he was the subject of a traffic stop and he was not free to leave.  Officer Everson asked for defendant's driver's license and photo identification, and directed defendant to come to the vehicle.  After hesitating, defendant produced a valid Florida driver's license.  Defendant asked why he was being stopped, and Officer Everson stated that he failed to make a complete stop at a stop sign.  Defendant repeated over and over that it was his house, and he needed to go inside.  Defendant was acting nervous, was constantly moving, including towards the door of the house, and generally refused to listen to Officer Everson.  Officer Everson told defendant to calm down, and that she needed his registration and insurance to complete the traffic violation process.

Officer Everson felt that something was not quite right because of defendant's constant requests and movements toward the door, his resistence to listening to her reasons for the stop, and his nervous behavior.  Since Officer Everson was alone but had a civilian rider, she decided to wait for back-up to arrive before she returned to her patrol car to write a ticket.  During this time defendant was "babbling" about it being his house, that he had kids, and that he needed to go inside the house.  Officer Everson saw a can of baby formula on the front passenger seat of defendant's vehicle, and asked defendant the ages of his children. Defendant listed the ages of his children, all of which were over six years old.  Officer Everson asked about the baby formula, and defendant stated that he also had a three month old child.  Officer Everson found this odd because it was not normal for a person to forget he had a three year old child and it was not normal for children over six years old to be using baby formula. Defendant continued his nervous behaviors, fidgeting, not standing still, and edging closer and closer to the house.

Officer Justin Gibens arrived within one to two minutes after the vehicle stopped.  Officer Everson then went to her patrol vehicle to write the tickets while Officer Gibens waited with the defendant.  Using her laptop computer in the vehicle, Officer Everson first determined that defendant's driver's license was valid and then that there were no outstanding arrest warrants in Lee County.  She asked Central Communications to perform a "long

form" warrants check, which would included other counties; this was completed, and no such warrants were discovered. Officer Everson advised Officer Gibens of the lack of outstanding warrants, and then began to write two tickets, one for failure to come to a complete stop at the stop sign and one for not providing proof of insurance and a registration.

Officer Gibens waited near defendant, who was pacing back and forth, sweating, switching keys from one hand to the other, and acting very nervous. Officer Gibens saw a bulge at defendant's left ankle, and asked what it was. Defendant replied that it was a bandage due to an injury he received playing ball. Defendant placed a key in the door to the house, telling Officer Gibens that it was his house. Defendant then opened the door and entered the house. Officer Gibens physically struggled with defendant, who attempted to close the door on the officer's hands. Officer Gibens ultimately removed defendant from the doorway of the house, handcuffed him, and arrested him for resisting an officer.

The physical altercation interrupted Officer Everson's ticket-writing process. Officer Everson observed the two men struggling as defendant attempted to enter the house. After Officer Gibens arrested and handcuffed defendant, both officers testified that defendant stated that he was cool now and that he was running only because there was "weed" in his sock.

Defendant was searched before being placed into the back of a patrol vehicle, and marijuana was discovered in his sock. Officer

Everson gave defendant his <u>Miranda</u> warnings, and then began making an inventory of the vehicle, which was going to be seized incident to the arrest and traffic violation.  Inside the baby formula can the officers discovered a quantity of crack cocaine.  Officer Gibens field tested both substances, which were positive for marijuana and cocaine respectively.  The records of the Central Communications indicated that the vehicle stop was at 8:26 a.m., the traffic ticket was being written at 8:33 a.m., and defendant was arrested at 8:37 a.m.

Defendant testified that he came to a full and complete stop at the stop sign.  Defendant testified that he saw the police vehicle as he proceeded through the intersection, but did not accelerate because he had not committed any traffic violation.  Nonetheless, defendant looked back at the officer several times and saw that the police vehicle never turned on its lights and siren until it arrived at his house.  Defendant testified that Officer Everson ordered him to stop and keep his hands in view, and he complied with these commands.  Defendant testified that he was asked for and produced a drivers license, but was not asked for registration or proof of insurance.  Officer Everson then asked defendant if he had any children, which defendant believes was her way of stalling.  Defendant responded that he did have children, although he denied giving their ages as being all over six years.

Defendant testified that Officer Gibens told him he could not go into the house until the tickets were written, and that he and

Officer Gibens talked about defendant's vehicle.  Officer Gibens then asked if he could look at the bulge in his sock, and defendant said no.  Officer Gibens started to move closer to defendant, which defendant testified led him to believe that Officer Gibens was going to conduct a search.  Defendant viewed such a search as unlawful, so he opened the unlocked door to his house and started to enter.  Officer Gibens stopped him, and there was a physical struggle at the door.  Defendant was ultimately arrested, and the officers seized the marijuana and the crack cocaine.  Defendant denied saying he was cool and that the only reason he ran was because of the marijuana.

Dennis Fahey, a former New Jersey police officer, now operates his own company, Physical Evidence Consultants.  Fahey was hired by defense counsel in this case; he took photographs of the scene of the stop sign on May 25, 2005, and drew a diagram of the location.  Defendant's Exhibits A1-A6, B.  The gist of his testimony was that he did not believe Officer Everson would have been able to see defendant run the stop sign if her estimates of distances and speeds were accurate.

## II.

### A.

Defendant argues that the traffic stop was unlawful because it violated his Fourth Amendment rights.  Under the Fourth Amendment an officer's decision to stop a vehicle is reasonable where the

officer has probable cause to believe that a traffic violation has occurred in her presence. <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996). Prior to <u>Whren</u> the Eleventh Circuit considered the officer's subjective motivation to determine if the stop was pretextual, and therefore unlawful. <u>E.g.</u>, <u>United States v. Hardy</u>, 855 F.2d 753, 756 (11th Cir. 1988). However, "[t]he <u>Whren</u> Court squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit." <u>United States v. Holloman</u>, 113 F.3d 192, 194 (11th Cir. 1997). "Under the Fourth Amendment, a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred, and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999)(citation and quotation of <u>Whren</u> omitted).

Under Florida law, failing to come to a complete stop at a stop sign is a traffic violation. Fla. Stat. § 316.123(2)(a). <u>See</u> <u>Simmons</u>, 172 F.3d at 778 (running stop sign provided probable cause for traffic stop).

The primary issue concerning the traffic violation is the respective credibility of Officer Everson and defendant Maddox. Officer Everson testified unequivocally that defendant failed to stop at the stop sign, while defendant testified unequivocally that he made a full and complete stop. The Court heard and saw each witness, as well as the other witnesses, and concludes that Officer

-7-

Everson's testimony is more credible in those areas where it conflicts with defendant's testimony.  Defendant has an interest in the outcome of the case; while this is true of every defendant, it is nonetheless is a relevant consideration.  Defendant has at least two prior felony convictions, including a prior drug conviction. The Court did not find defendant's testimony that he made a full stop at the stop sign persuasive, but credits the testimony of Officer Everson.  The Court found Officer Everson's demeanor and testimony reliable.  While the estimates concerning distances and speeds were not precise, even the photographs presented by the defense in large part supported her testimony that she was able to see defendant's vehicle run the stop sign.  The Court finds as a matter of fact that defendant committed a traffic infraction in violation of Florida law by failing to come to a complete stop at the stop sign.  Therefore, the officer's stop of the vehicle did not violate the Fourth Amendment.

**B.**

The legality of a detention following a traffic stop may also be jeopardized if an officer improperly extends its duration. United States v. Hernandez, 418 F.3d 1206, 1209 n. 3 (11th Cir. 2005)(in light of Muehler v. Mena, 125 S. Ct. 1465, 1471 (1005), the proper focus is on the duration of the stop, not the scope of questioning).  The officer, however, is authorized to conduct a variety of checks on the driver and the vehicle, including some questioning of the driver, running a computer check for outstanding

warrants, and requesting consent to search the vehicle. Ohio v. Robinette, 519 U.S. 33, 35-36 (1996); United States v. Boyce, 351 F.3d 1102, 1106-07 (11th Cir. 2003); Simmons, 172 F.3d at 778. The traffic stop occurred at 8:26 a.m. and the back up officer arrived within two minutes. The potential dangers to officers associated with traffic stops is well recognized. Maryland v. Wilson, 519 U.S. 408 (1997); United States v. Clark, 337 F.3d 1282 (11th Cir. 2003). "[O]fficers conducting a traffic stop may 'take such steps as [are] reasonably necessary to protect their personal safety.'" United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir.), cert. denied, 534 U.S. 830 (2001)(quoting United States v. Hensley, 469 U.S. 221 (1985)). Requesting or waiting the short time for the arrival of a back-up officer was, under the totality of the circumstances, a reasonable step to protect personal safety. The tickets were being written by 8:33 a.m., but the process was interrupted when defendant attempted to enter his house. Defendant was arrested by 8:37 a.m. Thus the total length of the detention was not unduly excessive. United States v. Perkins, 348 F.3d 965, 969-70 (11th Cir. 2003)(collecting cases).

Defendant's reliance upon United States v. Pruitt, 174 F.3d 1215, 1217 n. 1 (11th Cir.), cert. denied, 528 U.S. 1023, 1178 (1999), is misplaced. There, the officers waited over fifteen minutes for a drug dog to arrive after defendant refused to give consent to search the vehicle, and the stop lasted about thirty minutes. Nothing of the sort occurred in this case.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Suppress (Doc. #27) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of

December, 2005.


_____
JOHN E. STEELE
United States District Judge

Copies:
AUSA
Counsel of Record